Edwin C. Price Company, Appellee, v. Ruggles and Rademaker Salt Company, Appellant.

Gen. No. 38,462.

Opinion filed February 3, 1936. Rehearing denied February 17, 1936.

STEARNS & JONES, of Chicago, for appellant; LLOYD M. MCBRIDE, of Chicago, of counsel.

WETTEN, PEGLER & DALE, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Edwin C. Price Company, a corporation, brought suit against the defendant, Ruggles & Rademaker Salt Company, a corporation, to recover commissions claimed to have been earned by plaintiff in procuring two contracts for the defendant for the sale of salt by defendant, one to Armour & Co., and the other to Swift & Co. Plaintiff's claim seems to be based upon

an oral contract entered into by it and defendant whereby defendant agreed to pay plaintiff for procuring the two contracts. Defendant denied it had entered into any such contract with plaintiff and denied plaintiff had procured the two contracts. Defendant admitted it had entered into two contracts for the sale of salt, the one with Armour & Co. and the other with Swift & Co.; that it had paid plaintiff certain commissions on part of the salt delivered under these two contracts, but contended that such commissions were paid for services rendered by plaintiff to defendant from day to day as orders were received for delivery of salt from the Armour and Swift companies, but that such commissions were not paid for procuring the contracts because plaintiff had not, in fact, procured them. There was a trial before the court without a jury, a finding and judgment in plaintiff's favor for $8,562.43, and defendant appeals.

The record discloses that defendant was in business at Manistee, Michigan, in producing and selling salt; that plaintiff corporation was engaged in business in Chicago and represented defendant prior to the time in question in connection with defendant's sale and delivery of salt to Armour & Co. and to Swift & Co., packers who conducted packing plants in Chicago and other cities. November 16, 1931, defendant entered into a contract with Swift & Co., whereby defendant agreed to sell and Swift & Co. to buy their entire requirements of salt, to be delivered as needed. The contract covered a period from January 1, 1932, to December 31, 1934. On December 28, 1931, defendant entered into another contract with Armour & Co., whereby defendant agreed to sell and Armour & Co. to buy certain quantities of salt covering a period from January 1, 1932, to December 31, 1934. Defendant delivered salt under the two contracts and about every two weeks for about 22 months, that is from about

January 1, 1932, to October 31, 1933, paid plaintiff certain commissions, based on the quantity of salt delivered under the two contracts. October 27th defendant wrote plaintiff a letter stating that after October 31, 1933, ''we will handle our stock yards business direct instead of through a broker,'' and therefore would not need plaintiff's services thereafter. The evidence further shows that for some of the salt delivered under the contracts plaintiff received no commission and does not claim any.

The evidence further shows that Edwin C. Price was president of plaintiff corporation; that he died in May, 1933; and it seems to be plaintiff's position that plaintiff, through the efforts of its president, Mr. Price, succeeded in procuring the contracts with the Armour and Swift companies. There is evidence to the effect that Mr. Price negotiated with Swift and with Armour prior to the execution of the two contracts, and there is also evidence to the effect that other negotiations were carried on by a representative of defendant with representatives of Armour and Swift.

As we understand the record and the brief of plaintiff, plaintiff tried the case on the theory that what was said between Mr. Price, representing plaintiff, and the representatives of Armour and Swift, could not be shown on the trial because Mr. Price was dead at that time, and this view was somewhat the same as the view of counsel for defendant. Just why such conversations seem to have been thought inadmissible does not clearly appear, except that when a question was asked of a witness, among the objections made by counsel for plaintiff, one was that the question called for ''a conversation with the deceased agent'' and the court seemed to be of the opinion that this conversation would violate some statute. We know of no statute that would render such conversation inadmissible.

Plaintiff's position was that the two contracts had been obtained by it through the efforts of its president, Mr. Price. In these circumstances, obviously what was said and done by Mr. Price could be testified to by any witness who knew the facts.

Defendant's position was that it had obtained the contracts through its own efforts and when it sought to show what a representative of it had said to a representative of Armour or Swift, the question was objected to because no representative of plaintiff was present. The objection was erroneously sustained. Since defendant's position was that it had obtained the contracts through its own efforts, it would seem that some of these negotiations would take place when a representative of plaintiff was not present, and, of course, evidence of these conversations or transactions was entirely competent. Defendant's counsel sought by questions to elicit some of these conversations, but upon objection he was not permitted to do so. He also offered proof of what he expected to show, but it was likewise excluded.

But counsel for plaintiff in their brief contend their objections were properly sustained because defendant's questions were leading, suggestive, and called for conclusions of the witnesses. Some of the questions were subject to these technical objections; others were not. Most of these objections were highly technical and should have been brushed aside by the trial judge. The purpose of all trials is to bring out the facts so as to enable the court to determine the truth of the matter in controversy, and such objections ought not to be the means of preventing the court from ascertaining what was said and done by the parties; especially is this so where there was no jury, as in the instant case.

There was a sharp conflict between the parties as to whether plaintiff had procured the execution of the

two contracts and whether defendant had orally agreed to pay plaintiff commissions for procuring them. And the defendant sought to show that under prior dealings between the parties, of a similar character to the transaction here involved, defendant had paid plaintiff commissions as it had done under the two contracts in question. This evidence was erroneously excluded by the court. As we stated in *Standard Brewery v. Healy,* 209 Ill. App. 272, 276: "The law is that whenever there is a conflict in the evidence relevant to the issue, evidence of collateral facts which have a direct tendency to show that the evidence of the one side is more reasonable and therefore more credible than that of the opposite side is admissible. *Glassberg v. Olson,* 89 Minn. 195; *Barney v. Fuller,* 133 N. Y. 605; *Cochrane v. West Duluth Industrial Const. & Imp. Co.,* 64 Minn. 369; *Dodge v. Weill,* 158 N. Y. 346; *Home Ins. Co. v. Weide,* 78 U. S. 438; *Chicago Gen. St. Ry. Co. v. Capek,* 68 Ill. App. 500. It would be a narrow rule that would limit the evidence to an affirmation of the agreement on the one hand and a denial of it on the other." See also par. 6, 16 Cyc. pp. 1118, 1119.

We think the evidence in the record is entirely too meager to enable the trial judge, and this court, to intelligently say what the facts of the matter in controversy are.

The judgment of the superior court of Cook county is reversed and the cause remanded, but since we are of opinion that defendant is not entirely without blame on account of the manner in which the case was tried, each party will be required to pay one-half of the costs in this court.

*Reversed and remanded.*

McSurely, P. J., and Matchett, J., concur.